UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

ANTHONY M. BENTLEY,

                  Plaintiff,

    -against-                                       No. 11 Civ. 8963 (CM)

THE WELLPOINT COMPANIES, INC., and
NATIONAL GOVERNMENT SERVICES, INC.,

                  Defendants.

--------------------------------------------------------------x

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

McMahon, J.:

For the reasons discussed below, Defendants' motion to dismiss is GRANTED.

### I. Background

On October 17, 2011, Plaintiff Anthony M. Bentley ("Plaintiff"), a lawyer, commenced this action pro se by filing a Summons and Complaint against Defendants Wellpoint, Inc. ("Wellpoint") and National Government Services, Inc. ("NGS") (collectively, "Defendants") in New York City Civil Court, County of New York. NGS is a Medicare administrative contractor, and administers the Medicare program on behalf of the federal government. (Defs.' Mot. to Dismiss at 4 (ECF No. 7).) Wellpoint is the parent company of NGS.

The Complaint reads as follows:

    1. Breach of contract (third party beneficiary). See Exhibit "A" annexed.
    2. Violation of GBL [New York's General Business Law] § 349(g). See Exhibit "B" annexed.
    3. Class Action certification.

1

    4. Declaratory relief.

(Defs.' Notice of Removal Ex. A ("Compl.") at 1.)

  Before proceeding any further, I dismiss Plaintiff's cause of action for "Class Action certification" sua sponte. "It is well settled in this circuit that pro se plaintiffs cannot act as class representatives." *McLeod v. Crosson*, No. No. 89 CIV. 1952, 1989 WL 28416, at *1 (S.D.N.Y. 1989).

  Reviewing Exhibit A, it appears that Plaintiff's breach of contract cause of action is based NGS's alleged failure to reimburse Plaintiff for "co-pays and deductibles" due to him as a result of his alleged status as a Qualified Medicare Beneficiary ("QMB").[1] (Compl. Ex. A at 5.) The Court bases this off a claim letter that Plaintiff wrote to NGS:

> I [was] advised by New York State that I have qualified for the MAP "QMB" program retroactive to 7/1/10 . . . I annex ("3") charges for co-pays and deductible that I was told will now be reimbursed as a result of the State Administrative Law Judge's decision so holding . . . The total claim for the above amounts to $1,606.17.

(*Id.*)[2] The Court presumes that the "breach" Plaintiff complains of must be the letter from NGS stating that it was unable to process a request[3] for a Medicare payment. (*Id.* at 1.)

  Plaintiff offers no explanation for why Defendants violated the New York General Business Law § 349. Exhibit "B" contains two printouts from NGS's website, and is not

---

[1] A Qualified Medicare Beneficiary is eligible to have his/her state pay his/her Medicare premiums as well as his/her Medicare co-payments and deductibles. (*See* Defs.' Mot. to Dismiss at 4.) *See generally Paramount Health Sys., Inc. v. Wright*, 138 F.3d 706, 708 (7th Cir. 1998) ("Federal law makes state participation in the Medicaid program, for which the federal government picks up a minimum of half the tab, conditional on the state's agreeing to defray those Medicare costs of [QMBs] that the federal government does not reimburse.").

[2] While Plaintiff purported to attach that decision (*see id.* at 29), the Court cannot read it, given that its nine pages are compressed into an approximately 2 x 1 inch box, and are too fuzzy to read even with a magnifying glass.

[3] I say "a request" because the letter is addressed to "Medicare Beneficiary," and bears no evidence that it was addressed to Plaintiff.

accompanied by anything else. The most substantive portion of the printouts includes the following statement:

> National Government Services has over 40 years of experience as a trusted partner to the federal government providing health care administration, support, and technology solutions. We put our customers first, delivering innovative solutions that help them achieve their objectives efficiently and cost effectively. We promise to provide the best value and unmatched service to our customers. National Government Services is a subsidiary of Wellpoint, a Fortune 35 company, and the largest health benefits company in the nation.
>
> Our depth of experience as a government health contractor means we have developed the people, processes, and tools needed to effectively and efficiently design and manage government health solutions in the following areas:
>
> - Health Care Administrative Services
> - Health Care Information (IT) Services
> - Health Care Support Services

(Compl. Ex. B.)

Finally, Plaintiff's Complaint does not specify what declaratory relief he seeks.

On December 8, 2011, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1442(a).

On January 12, 2012, Defendants filed a motion to dismiss the Complaint, for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Defendants attached a declaration from Peter Reisman, a government employee whose job duties include overseeing the contractors responsible for processing claims in the Medicare program. (Decl. of Peter Reisman in Support of Defs.' Mot. to Dismiss ¶ 1.)

I will consider this declaration solely in connection with Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction; I will not convert Defendants' 12(b)(6) motion for failure to state a claim into one for summary judgment. "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings . . . ." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). "The consideration of materials extrinsic to the pleadings does not convert the [Rule 12(b)(1)] motion into one for summary judgment." *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 387 (S.D.N.Y. 2004) (citing *See CCS Int'l Ltd. v. United States,* No. 03 Civ. 507, 2003 WL 23021951, at *2 (S.D.N.Y. Dec. 24, 2003)).

The declaration states that neither Medicare nor its contractor NGS issued any initial determination related to Plaintiff's "Patient Request for Medical Payment," and that there is no record of any appeal filed by Mr. Bentley. (*Id.* ¶ 4.)

On January 25, 2012, Plaintiff filed a "declaration" in opposition to Defendants' motion to dismiss, stating that "defendants' present motion [is] premature, pursuant to FRCP Rule 15(a)(1)(B), in view of plaintiffs' [sic] forthcoming Amended Complaint, authorized by such rule, (currently being drafted) and due to be filed herein not later than 2/2/12." (Decl. of Anthony M. Bentley in Opp'n to Defs.' Rule 12 Mot. Filed 1/12/12 at 1 (ECF No. 12).) Plaintiff's declaration contains no substantive arguments in opposition to Defendants' motion to dismiss.

On February 2, 2012, Plaintiff filed what he styled as an Amended Complaint ("Am. Compl."). (ECF No. 13.) The Amended Complaint appears to be a responsive motion of sorts (and possibly a motion to remand). It does request a declaration of "the rights and legal relations of the parties" pursuant to 28 U.S.C. § 2201 and New York CPLR § 3001 (the New York state

4

declaratory relief provision). Plaintiff does not specify what rights and relations he would like declared.

Under the "Allegations" section, Plaintiff argues that the following phrases from Defendants' Rule 7.1 Statements (filed so courts can check for conflicts) should be stricken as improper:

- "Wellpoint is being sued in its capacity as a government contractor administering Medicare benefits, and, as such, does not concede that it is required to file this statement. Wellpoint reserves all rights accordingly."
- "NGS is being sued in its capacity as a government contractor administering Medicare benefits, and, as such, does not concede that it is required to file this Statement. [NGS] reserves all rights accordingly. "

(Am. Compl. ¶¶ 5-9.)

Next, Plaintiff seeks to strike Defendants' "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings," and the text of Federal Rule of Civil Procedure 56 that they attached (ECF No. 9) — claiming that the former is "deceptive and intentionally misleading," and the latter is "improper" — in light of the fact that no Rule 56 motion has been filed. (*Id.* ¶¶ 10-13.) Plaintiff seems to be laboring under the impression that a party must specifically request Rule 12(d) treatment in order to convert a Rule 12(b) motion into one for summary judgment.[4]

Last, Plaintiff takes issue with the fact that the United States Attorney's Office for the Southern District of New York is representing Defendants in this proceeding. Plaintiff alleges that there must be an "undisclosed indemnity agreement" between the Government and Defendants, and demands the immediate production of any such agreement. If the Government

---

[4] The Court notes, for Plaintiff's benefit, that Defendants do not need to file a separate Rule 12(d) motion. The mere attachment of material outside the pleadings is sufficient to permit conversion of a motion to dismiss into one for summary judgment, if the Court: (1) does not exclude the material; and (2) provides reasonable opportunity to the parties to present all material pertinent to the motion. Fed. R. Civ. P. 12(d). However, I decline to do so here.

does not produce the agreement, Plaintiff claims that the case should be remanded to state court. Plaintiff is presumably laboring under the impression that the presence of the Government — and not the subject matter of Plaintiff's Complaint — is the jurisdictional hook into this Court.

In sum, the Plaintiff's Amended Complaint only contains objections to purported procedural deficiencies in Defendants' filings, and a request for some unspecified declaratory relief.

On February 16, 2012, Defendants' filed a motion to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) Defendants claim that the Amended Complaint replaced the original Complaint, and thus should be dismissed; however, Defendants incorporate the arguments from their original motion to dismiss should this Court decide to address Plaintiff's original claims. Defendants argue that Plaintiff's procedural objections are without merit, and that, to the extent that Plaintiff's Amended Complaint can be read to seek remand, such request is untimely.

## II. Plaintiff's Original Complaint is Still Operative, and I Will Treat the Amended Complaint as Plaintiff's Opposition to Defendants' First Motion to Dismiss

Defendants are correct that Plaintiff's putative Amended Complaint contains neither factual allegations nor any indicia of a cause of action. Plaintiff Amended Complaint is, in essence, a request to strike documents, cloaked in the guise of a declaratory judgment action.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "DJA"), a court "may declare the rights and other legal relations of any interested party seeking such a declaration" in "a case of actual controversy." The DJA "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). In deciding whether to exercise its permissive jurisdiction, district courts may consider "equitable, prudential, and policy arguments." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136

(2007). In determining whether to exercise jurisdiction over a declaratory judgment action, courts should examine the situation in its entirety. *Great American Ins. Co. v. Houston General Ins. Co.*, 735 F. Supp. 581. 585 (S.D.N.Y. 1990).

The Second Circuit has provided two factors to help district courts properly exercise the broad discretion conferred by the DJA: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Int'l Wire Grp., Inc.*, No. 02 Civ. 10338, 2003 WL 21277114, at *4 (S.D.N.Y. June 2, 2003) (quoting *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992)); *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969).

Here, deciding whether certain Rule 7.1 statements and form notifications to pro se plaintiffs should be stricken would neither "serve a useful purpose in clarifying and settling the legal relations in issue" nor "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* The heart of this action is not Defendants' filings, but Plaintiff's apparent desire to recover Medicare co-pays and deductibles. This Court will not waste its time by exercising the discretion provided to it by the Declaratory Judgment Act to adjudicate such a motion.

While Plaintiff is an attorney, and therefore is not due the "very liberal consideration afforded non-lawyer pro se parties," *Guardino v. Am. Sav. & Loan Ass'n of Fla.*, 593 F. Supp. 691, 694 (E.D.N.Y. 1994), I will give him the benefit of the doubt here. I will consider the original Complaint to still be operative, and treat the Amended Complaint as Plaintiff's

7

opposition to Defendants' motion to dismiss. The original Complaint at least hints at the legal injuries that Plaintiff might seek to remedy in this action.

## III. Plaintiff's Complaint is Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(1) for Failure to Exhaust Administrative Remedies

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over the subject matter" of a case. *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62-63 (2d Cir. 2009) ("It is a fundamental precept that federal courts . . . lack the power to disregard such limits as have been imposed by the Constitution or Congress.") (internal quotations omitted). A plaintiff bears the burden of establishing by a preponderance of the evidence that subject-matter jurisdiction exists over his or her complaint. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). It is appropriate for the Court to consider materials outside of the pleadings in assessing such a motion. *Id.*

The "special Medicare [judicial] review route . . . is set forth in a complex set of statutory provisions, which must be read together." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 7-8 (2000). This procedure provides the sole means of review of a Medicare reimbursement decision. *See* 42 U.S.C. §§ 405(g)-(h), 1395ff (making section 405(g) applicable to Medicare), 1395ii (making section 405(h) applicable to Medicare); *see also Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) ("The third sentence of 42 U.S.C. §§ 405(h) . . . is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare statute.").

"Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act." *Heckler*, 466 U.S. at 605. A claimant obtains a "final decision" from the Secretary "only after [he] has pressed his claim through all designated levels of administrative review." *Id.* at 606.

Section § 405(h) limits judicial review of claims for Medicare benefits. That statute states:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). The Supreme Court has held that the first two sentences of section 405(g) "prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g)." *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975) (citations omitted). The third sentence of the statute "provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act." *Heckler*, 466 U.S. at 614-15. Thus, unless this procedure is complied with, no court has subject matter jurisdiction to address the claims at all. *See Giesse v. Sec'y of Dept. of Health and Human Servs.*, 522 F.3d 697, 703-704 (6th Cir. 2008) ("The Medicare Act's grant of subject matter jurisdiction only permits judicial review of "the final decision of [the Secretary] made after a hearing." (citing 42 U.S.C. § 405(g)).

Here, although Plaintiff's Complaint sounds in breach of contract, his claims "arise under" the Medicare statute such that judicial review is limited to the procedures and remedies found at 42 U.S.C. §§ 405(g) and (h). The Supreme Court has interpreted the "arising under" language in § 405(h) broadly. *Heckler,* 466 U.S. at 615 (citing *Weinberger*, 422 U.S. at 760-61). A claim "arises under" the Medicare Act if: (1) "both the standing and the substantive basis for the presentation" of the claim is the Act, *id.* at 615; or (2) the claim is "inextricably intertwined"

9

with a claim for medical benefits, *id.* at 614. A claim may arise under the Medicare Act even though, as pleaded, it also arises under some other law. *See Salfi*, 422 U.S. at 760-61. Courts "must discount any 'creative pleading' which may transform Medicare disputes into mere state law claims, and painstakingly determine whether such claims are ultimately Medicare disputes." *Wilson v. Chestnut Hill Healthcare*, No. 99-1468, 2000 WL 204368, *4 (E.D. Pa. Feb. 22, 2000); *see also Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487 (7th Cir. 1990) ("If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined."). A claim does not "arise under" the Medicare Act only in "certain special cases" where a claim is "wholly 'collateral'" to a claim for benefits and the injury suffered could not be remedied by the retroactive payment of benefits after the exhaustion of remedies. *Heckler*, 466 U.S. at 618.

Because Plaintiff is seeking payments from Medicare through this lawsuit — as evidenced by the forms he has submitted with the Complaint — his claims are inextricably intertwined with a Medicare benefits determination. Plaintiff's breach of contract claim appears to be a request reimbursement for Medicare related expenses. Plaintiff's barren claim for a "Violation of GBL § 349(g)," with its attached copy of the NGS webpage, can only be read — giving Plaintiff all benefit of the doubt — to allege that NGS engaged in deceptive acts or practices relating to NGS's alleged failure to reimburse Plaintiff for Medicare money allegedly due. Such a claim arises under the Medicare statute because it inextricably intertwined with a Medicare benefits determination. *See Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) (finding plaintiff's state law tortious interference claim

"inextricably intertwined" with a Medicare benefits determination because hearing the claim "would necessarily mean redeciding [the] Medicare claims decisions"); *Bodimetric*, 903 F.2d at 487 (holding that plaintiff's state law claims for fraud, negligent misrepresentation, and breach of contract arose under the Medicare Act). Additionally, Plaintiff's claim for declaratory relief can only be read to request that this Court declare that Plaintiff is due his Medicare co-payments and deductibles. Accordingly, Plaintiff's claims are governed by the jurisdictional requirements of 42 U.S.C. §405.[5]

Plaintiff appears to be filing this suit based on a determination made at the state level; however, he filed this action against the federal government's contractors. As to them, Plaintiff has not exhausted his administrative remedies, because the only step he has taken to date is sending a request for payment to NGS. He has not obtained a "final decision" on his claim. *See* Reisman Decl. ¶ 4 (noting that there was no initial determination issued by NGS and no appeal filed by Plaintiff).

Accordingly, because this Court lacks subject matter jurisdiction to decide them, Plaintiff's claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

---

[5] The fact that Plaintiff is suing private entities provides no relief from the jurisdictional bar of § 405(h). *See Bodimetric*, 903 F.2d at 488 ("We have determined that Bodimetric's claims against Aetna arise under the Medicare Act and that Bodimetric may not circumvent the terms of section 405(h) simply because a private entity (Aetna) serves a public function."); *see also Reg'l Med. Transp., Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 720 (E.D. Pa. 2008) (state tort law claims for tortious interference with contractual relations, misfeasance, and negligent supervision against Medicare contractor subject to § 405(h)).

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss.

The Clerk of the Court is directed to remove the motion at Docket Nos. 6 and 14 from the Court's list of pending motions and close this case.

Dated: February 17, 2012

_____
U.S.D.J.

BY ECF TO ALL COUNSEL